STATE OF NEBRASKA, APPELLEE, V. SHELIA A. LEE, APPELLANT.

417 N.W.2d 26

Filed December 24, 1987.    No. 87-456.

Mark S. Trustin of Smith, Trustin & Schweer, for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

On March 11, 1987, following a jury trial, defendant-appellant, Shelia A. Lee, was found guilty of one count each of possession of marijuana with intent to deliver, in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1986), and possession of cocaine, in violation of § 28-416(3). Lee was subsequently sentenced to concurrent periods of imprisonment, 3 to 5 years on the marijuana conviction and 3 years on the cocaine conviction. In this appeal Lee assigns as error, among other things: (1) the denial of her motion to suppress statements, (2) the joinder of her case with another defendant's for trial, and (3) the sufficiency of the evidence to support her convictions. We reverse and remand for further proceedings.

On October 21, 1986, acting principally on information gleaned from a confidential informant to the effect that one Kim Britt was selling drugs from a designated residence in Omaha, officers of the Omaha Police Division executed a search warrant at that address. The warrant authorized a search of the premises, together with the persons of Britt and "a black female, and John and/or Jane Doe." At the residence the officers found Lee, a second black female, and Lee's infant child in the living room. They also found a quantity of marijuana packaged in 23 "baggies" inside a corn chip canister on a coffee table in the living room, a bit over an ounce of marijuana in a paper sack in the kitchen, several items covered with cocaine residue in various parts of the residence, and several items indicating that Lee lived at the premises, such as envelopes bearing her name, as well as other items not material to the resolution of this appeal.

As the officers engaged in the search, an automobile stopped across the street from the residence, and Britt exited from the passenger's side and approached the residence. Officers immediately moved to detain both the driver of the automobile, one Donald E. Gorum, and Britt. Gorum gave the officers permission to search the automobile. As a result of that search, officers found several tinfoil packages of heroin and a black or blue jacket containing several packages of marijuana.

Lee was then transported to the Central Police Station detention area, where she was informed of her *Miranda* rights by Officer Stephen Sanchelli. Lee initially declined to make a statement, but later changed her mind and spoke with Sanchelli for about 15 minutes. Lee asserted that she had no knowledge of the contents of the corn chip canister, but admitted that other marijuana found in the house was hers and that she used, but did not deal in, cocaine.

Subsequently, Lee was charged as stated earlier; Britt was charged with possession with intent to deliver heroin and possession with intent to deliver marijuana.

Notwithstanding the different charges, the State moved to consolidate Lee's trial with Britt's. That motion was denied on December 29, 1986. At some later proceeding not in the record before this court, the State's motion to consolidate was apparently reconsidered and granted, for on March 9, 1987, the trial resulting in this appeal was begun against both Lee and Britt. What is in the record is Lee's continued objection to the consolidation.

As part of its case in chief against Britt, the State adduced testimony regarding the jacket, and the jacket itself was received in evidence. The following exchange was then had between Omaha Police Officer Gary Boldt and Lee's attorney on cross-examination:

[Attorney] And I believe it was your testimony that you recognized Kim as soon as he got out of the car; is that right?

[Boldt] That's correct.

[Attorney] How was it that you recognized him?

[Boldt] I have seen photographs of Mr. Britt before.

[Attorney] In what connection?

[Boldt] Other narcotics investigations.

Although Britt did not immediately object to this statement, a sidebar conference was requested shortly thereafter, and, out of hearing of the jury, Britt moved for a mistrial. As Britt's attorney observed in the course of that discussion, "It wasn't the State's problem. I think it's a problem with consolidating these matters." The district court granted Britt's motion for mistrial, and the jacket was subsequently withdrawn from evidence.

The trial against Lee continued, the State's theory being that Lee had cooperated with Britt in the sale of drugs from the subject residence. Over Lee's objection, Gorum testified to the effect that he had seen Lee give Britt sums of money and that he had seen Britt handle the canister and the marijuana in it. Gorum also testified that he had purchased marijuana from Britt in the past, but never from Lee, and that he had never seen Lee "with her hands in that canister or taking things out of that canister . . . [or] exchange marijuana with anybody including Kim Britt."

We will first consider Lee's assertion that the trial court erred in overruling her motion to suppress the statement she made to Sanchelli. This court will, in determining the correctness of a trial court's ruling on a motion to suppress, uphold the trial court's findings of fact· unless those findings are clearly erroneous. *State v. Bonczynski, ante* p. 203, 416 N.W.2d 508 (1987). In determining whether a trial court's findings in ruling on a motion to suppress are clearly erroneous, we recognize that the trial court has observed the witnesses testifying regarding such motion. *State v. Vrtiska*, 225 Neb. 454, 406 N.W.2d 114 (1987); *State v. Brown*, 225 Neb. 418, 405 N.W.2d 600 (1987).

A hearing on Lee's suppression motion was held on February 6, 1987. Sanchelli testified that Lee was placed under arrest at the residence and transported to the Central Police Station, where he advised her of her *Miranda* rights, using a standard rights advisory form, and made note of Lee's responses. On direct examination by the State's attorney, Sanchelli testified:

[Sanchelli] The last question is: "Knowing your rights in this matter, are you willing to make a statement to me

now?" Sheila [sic] Lee stated, "No." But a few seconds later changed her mind to "Yes," that she would be willing to make a statement.

[Attorney] Tell the Court exactly in your best memory what happened when you read her that last question. She said, "No?"

[Sanchelli] She said, "No." And I started to gather some paperwork, and I told her, I said, "If you don't want to talk to me, that's all right.["] And then she said that she would change it to "Yes," and she would make a statement.

[Attorney] Okay. Between the time she said "No," and the time she said, "Yes," did you make any promises to her or threaten her in any fashion to get her to change her mind?

[Sanchelli] No, sir.

Sanchelli was vigorously cross-examined at the suppression hearing and repeated this testimony. Sanchelli also testified that Lee did not appear to be ill, injured, or under the influence of alcohol or drugs during this interview, nor did she complain of any such difficulty; that Sanchelli had had no difficulty understanding what Lee was saying; and that she seemed able to understand him. Lee offered no evidence at all in dispute of Sanchelli's testimony.

It was recently suggested, in a single-judge opinion in *State v. Pettit, ante* p. 218, 417 N.W.2d 3 (1987), that after a defendant has invoked the right to be silent but there is subsequent police interrogation of the defendant, this court should employ three analytic criteria to determine whether the defendant's right to be silent has been scrupulously honored: (1) Did the police immediately cease interrogation on the defendant's request? (2) Did the police resume an interrogation of the defendant only after passage of a significant time and renewal of the *Miranda* warning? and (3) Did police restrict the subsequent interrogation to a transaction or occurrence which was not the subject of the prior discontinued interrogation? The interrogation of Lee passes muster under all three criteria: it is the uncontroverted testimony of Sanchelli that interrogation ceased immediately upon Lee's refusal to answer questions and

that the police did not resume subsequent interrogation; rather, Lee changed her mind and spoke voluntarily. Because Lee's statement was voluntary, the third criterion is inapplicable.

On these facts we cannot say that the trial court's ruling on Lee's suppression motion was clearly erroneous; the suppression motion was properly denied and evidence of Lee's statements properly admitted at trial.

We next consider Lee's contention that her case was improperly joined with Britt's for trial. As we noted in *State v. Brehmer*, 211 Neb. 29, 34, 317 N.W.2d 885, 889 (1982):

> The matter of consolidating criminal prosecutions for the purpose of trial is governed by Neb. Rev. Stat. § 29-2002 . . . . Section 29-2002(3) allows the joinder of defendants for trial "if . . . the defendants . . . could have been joined in a single indictment, information or complaint." The joinder of defendants in an indictment or information is governed by § 29-2002(2), which allows joinder if the defendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."

It is clear that the charges Lee faced and those against her codefendant could not have been joined in a single information. Britt was charged with possession of heroin with intent to distribute; there was no "act or transaction or . . . series of acts or transactions" alleged which linked Lee to the heroin. Similarly, Lee was charged with possession of cocaine; there was no "act or transaction or . . . series of acts or transactions" alleged which linked Britt to the cocaine. Although *Brehmer, supra*, did not adopt a single test to determine if two defendants' actions constitute the "same act or transaction" under Neb. Rev. Stat. § 29-2002(2) and (3) (Reissue 1985), it is clear that the facts outlined herein do not satisfy any of the tests mentioned in *Brehmer*.

Therefore, joinder of Britt's case with Lee's was improper. In former times it would next have been appropriate to ask if Lee had in fact been prejudiced by that improper joinder. Under *Brehmer* it is no longer necessary to do so. As we noted there:

> "The rule against jointly indicting and trying different defendants for unconnected offenses is a long-established

procedural safeguard. . . . It is not 'harmless error' to violate a fundamental procedural rule designed to prevent 'mass trials.' "...

. . . .

. . . [I]n cases where multiple defendants are joined for trial in a manner inconsistent with § 29-2002, such misjoinder is prejudicial per se and severance is not a matter of discretion but is a matter of right.

(Citations omitted.) *Id.* at 38-39, 317 N.W.2d at 891. As in *Brehmer, supra*, we are compelled to reverse Lee's conviction.

We are not yet finished, however, as we must consider Lee's challenge to the sufficiency of the evidence to reach a complete resolution of this appeal. As we noted in *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986): "[T]he U.S. Supreme Court [has] held that an appellate finding of insufficient evidence to convict is tantamount to an acquittal and, therefore, that the double jeopardy clause precludes a second trial once the reviewing court has found the evidence legally insufficient." *Id.* at 295-96, 399 N.W.2d at 718 (citing *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)). In light of our determination that joinder was improper, it is now necessary to examine the sufficiency of the evidence to support Lee's convictions. If it appears the evidence is sufficient to support the convictions, the cause may be remanded to the district court for further proceedings; if the evidence is not sufficient under *Palmer, supra*, the cause must be dismissed.

In determining whether the evidence is sufficient to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and the conviction must be sustained if, taking the view of the evidence most favorable to the State, there is sufficient evidence to support the conviction. *State v. Richardson, ante* p. 274, 417 N.W.2d 24 (1987); *State v. Patman, ante* p. 206, 416 N.W.2d 582 (1987); *State v. Pence, ante* p. 201, 416 N.W.2d 581 (1987).

The jury found Lee guilty of possession of marijuana with intent to deliver. Constructive possession of an illegal substance

may be proved by direct or circumstantial evidence, and may be shown by the accused's proximity to the substance at the time of the arrest or by a showing of dominion over the substance. *State v. Sotelo*, 197 Neb. 334, 248 N.W.2d 767 (1977). The evidence adduced supports the inference that Lee was in possession of the marijuana found in the corn chip canister. The intent to deliver or distribute may be inferred from circumstantial evidence; possession of a quantity of a controlled substance in a form customarily used for delivery or distribution will support an inference of possession with intent to deliver or distribute. *State v. Hunt*, 224 Neb. 594, 399 N.W.2d 806 (1987); *State v. Rathburn*, 195 Neb. 485, 239 N.W.2d 253 (1976); *State v. Sullivan*, 190 Neb. 621, 211 N.W.2d 125 (1973). Thus, the evidence supports the inference that Lee had the necessary intent.

The jury also found Lee guilty of possession of cocaine. In her statement to Sanchelli, the content of which we have concluded was properly admitted at trial, Lee admitted using cocaine, and cocaine residue was found on several items in Lee's residence. Therefore, the evidence also supports the jury's finding that Lee possessed cocaine.

Consequently, we find that the evidence adduced at trial was sufficient to support Lee's convictions as to both charges; the requirements of *State v. Palmer, supra*, having thus been met, we remand the cause to the district court for further proceedings on both charges.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.